**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FARQED AL ABDULLATIF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KIKOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 20-4588 |

**O P I N I O N**

SCOTT W. REID                                                                                     DATE:  April 21, 2023
UNITED STATES MAGISTRATE JUDGE

Farqed Al Abdullatif[1] brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be granted in part and the matter remanded to obtain a report from a consulting neurologist or other expert in pseudotumor cerebri, and for clarification of the claimant's obesity impairment.

I.        *Factual and Procedural Background*

Al Abdullatif was born on July 24, 1985.  Record at 123.  She completed middle school or some high school in Iraq.  Record at 39-40.  She was admitted to the United States as a refugee in 2014.  Record at 39.  She communicates in Arabic, and cannot read or speak English. Record at 144.  She has never worked.  Record at 145.

On January 25, 2018, Al Abdullatif filed an application for SSI, alleging disability since 2003, as a result of depression.  Record at 123, 145.  Her application was denied on February 26,

---

[1] Although the Clerk's Office somehow mangled the Plaintiff's name to Farfqued Alabdullatir, it is plain that her actual name is Farqed Al Abdullatif, since this is the name on every medical record, and on her application for SSI. *See*, *e.g.* Record at 123.

2018. Record at 51. Al Abdullatif then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 67. A hearing was held in this matter on May 20, 2019. At the hearing, Al Abdullatif discussed not only her mental impairments, but her headaches and related blurred vision and balance issues, which she claimed to experience three or four times per week. Record at 40-42, 45-46.

On June 13, 2019, the ALJ issued a written decision denying benefits. Record at 21. The Appeals Council denied Al Abdullatif's request for review on July 15, 2020, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security. Record at 1. Al Abdullatif then filed this action.

II.   *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that Al Abdullatif suffered from the severe impairments of depression, post-traumatic stress disorder, pseudotumor cerebri (misidentified as "pseudomotor cerebri"), intracranial hypertension, headaches, and obesity.  Record at 23.  She found that none of these impairments, and no combination of impairments, met or medically equaled a listed impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Record at 23-25.

3

The ALJ concluded that Al Abdullatif retained the RFC to engage in a "full range of work at all exertional levels," limited only by the need to have no interaction with the public, and by the fact that she would be off-task 10% of the day. Record at 26. In reliance on the testimony of a vocational expert who appeared at the hearing, the ALJ found that Al Abdullatif could work as a box bender, bagger, or garment sorter. Record at 29. She therefore decided that Al Abdullatif was not disabled. Record at 29.

In her Request for Review, Al Abdullatif argues that the ALJ's RFC assessment was faulty for failing to include any limitation related to her headaches, and the related visual limitations. She also argues that the ALJ failed to consider her obesity, except in boilerplate terms.

IV.     *Discussion*

    A.     *The RFC Assessment is Defective for Failure to Include any Limitation Relating to Al Abdullatif's Pseudotumor Cerebri and its Symptoms*

The ALJ wrote that the medical evidence did not demonstrate disabling limitations as a result of Al Abdullatif's headaches, explaining:

> The evidence of record shows three emergency room visits between March 2018 and February 2019 for headaches. The first visit occurred at Albert Einstein Medical Center emergency room in March 2018 at which time she complained of dizziness, a headache, and pressure behind her eyes. During this visit, the claimant was calm and alert. She described her pain as just a 1 out of 10 with her pain level reaching moderate at its maximum. She then visited Jeanes Hospital emergency room in September 2018 and February 2019 due to a headache with pain and pressure in her left eye as well as blurred vision. However, the claimant had "marked relief" with the treatment she received there.

Record at 26-27. (Internal citations omitted).

The ALJ continued:

> The claimant followed with Einstein Neurology on an outpatient basis for her headaches. She stated that her headaches happened almost daily with blurred vision though the records indicate that she did not follow a proper diet or hydrate enough. A brain MRI suggested pseudotumor cerebri and later a lumbar puncture in September 2018 showed

4

> elevated fluid.  With removal of the extra central spinal fluid to reduce the pressure, the claimant's symptoms significantly improved though the headaches did return.  However, as to the claimant's vision, [at] a January 2019 neuro-opthalmologist appointment, her visual complaints were vague and aside from mild disc edema, she was otherwise stable. ... Moreover, in October 2017, the claimant staged that her headaches had almost resolved completely.

Record at 27.  (Internal citations omitted).

As noted above, the ALJ included no limitation in her RFC assessment related to Al Abdullatif's diagnosed pseudotumor cerebri, or its symptoms, which even the ALJ conceded included headaches, dizziness and blurred vision.  A thorough review of the record reveals that the ALJ's discussion relied upon quotes from the medical record which were so selective as to be misleading.

Pseudotumor cerebri, also known as idiopathic intracranial hypertension, occurs when the pressure inside an individual's skull increases for no obvious reason. Https://www.mayoclinic.org.  The symptoms mimic those of a brain tumor, including "often severe headaches," nausea, and brief episodes of blindness, and the condition can cause swelling of the optic nerve and result in vision loss.  *Id*.  The symptoms tend to recur.  *Id*.  Al Abdullatif was diagnosed with pseudotumor cerebri on August 21, 2017, and the treatment note mentions that she had been diagnosed in the past with the same condition.  Record at 342.

As the ALJ reported, Al Abdullatif told her primary care physician on October 5, 2017, that her headaches were "almost resolved completely" after starting on the medicine prescribed by her neurologist.  *Id*.  However, this note is misleading in isolation, given that many subsequent notes from multiple sources confirm that her symptoms persisted.  As soon as December 11, 2017, her primary care physician stated:  "she is still reporting headaches, migraines" although she was taking Topamax.  Record at 338.

Further, as acknowledged by the ALJ, all of Al Abdullatif's emergency room visits occurred after October 5, 2017. On March 26, 2018, Al Abdullatif was referred by her physician to the Albert Einstein Medical Center emergency department for treatment of a headache of 6/10 severity which started the previous day, and was accompanied by ringing in her head, pressure behind her eyes, and dizziness. Record at 379, 382. Although the ALJ wrote that Al Abdullatif's pain was only 1/10 on this visit, this was her pain level upon discharge, after taking 650 mg of acetaminophen. Record at 380, 390. This is, therefore, another example of a misleading observation by the ALJ.

The emergency room notes report:

> This is a 32-year-old female with a history of pseudotumor cerebri which did not require shunt, depression, frequent headaches presenting from the CPC clinic for worsening of her headaches. Patient states she usually gets headaches a couple times a week but they are becoming more frequent and worse that usual. Her headaches are now associated with visual changes such as blurry vision and streaks of light. She has never had like this before.

Record at 394. Al Abdullatif described the 6/10 headache as "mild." *Id*. Papilledema (optic disc swelling) was noted. *Id*. She was started on Diamox. *Id*.

On September 29, 2018, Al Abdullatif sought care at the Jeanes Hospital emergency room, complaining of headaches with nausea, photophobia, and dizziness. Record at 276. She told the nurse that she had a lumbar puncture the week before "to drain extra fluid in her brain." *Id*.

This note not only demonstrates that Al Abdullatif's pseudotumor cerebri were not resolved permanently in October 2017, but also shows that another of the ALJ's references to the medical record was misleading. The ALJ cited a neurologist's treatment note from March 27, 2019, which stated that Al Abdullatif had "significantly improved symptoms from the removal of extra spinal fluid," but she failed to note that the very note she cited actually reads: "Improved

headaches immediately afterwards, with return of severe headaches prompting return to the ED about a week later." Record at 310. Of course, this is confirmed by the September 29, 2018, emergency room records cited above.

Similarly, on February 25, 2019, the Jeanes Hospital Emergency Room reported: "Pt. states she is having headache and pain and pressure in L eye. States lost her vision and now its blurry. Pt does have a hx of migraines but also has had fluid removed from spine. Pt's son states 'she was having trouble with her vision and they said she had too much fluid, it was too much pressure.'" Record at 263. Al Abdullatif was given intravenous pain medication. Record at 265.

Nor do the records permit a conclusion that Al Abdullatif experienced severe headaches only on the occasions she sought treatment at a hospital emergency room. On August 9, 2018, an Einstein neurologist, Annie L. Hsieh, MD, Ph.D., gave this history: "32-year-old Arabic-speaking obese female with history of depression presented with headache since 2014 and bilateral hand tremor since 2016. She described … her headache[s] usually happen first thing when she wakes up, occurs almost daily, with a severity 10/10, bilateral, squeezing in nature, starting from bilateral occipital region and radiate to bilateral frontal, associated with nausea, vomiting and blurry vision, exacerbated by loud noises and sitting up." Record at 290.

Dr. Hsieh further wrote: "Since last visit in 2018, she still experiencing a lot of headache, 8/10 in severity, daily, with no improvement after increase Topamax … and continue with Diamox. She has intermittent blurry vision and diplopia. She was evaluated by neuroopthalmology clinic on 7/12/2018 and was found to still have bilateral disc edema … She fell in the bathroom 2 weeks due to vertigo." Record at 290-291.

A neurology note dated March 22, 2019, a few months prior to Al Abdullatif's hearing before the ALJ, states: "Headache characteristics unchanged … she continues to have blurry vision during episode … she also complain[s] about tremors which are unchanged from previous visit."  Record at 280.  The note continues: "dizzy during headache, numbness and tingling in arms and legs since 3 ½ years."  Record at 281.

The ALJ observed that the March 22, 2019, note also stated that Al Abdullatif "does not have a proper diet, nor does she hydrate well."  Record at 27, 280.  This is not entirely irrelevant since pseudotumor cerebri is most common in obese women.  Https://www.mayoclinic.org.  However, given that Al Abdullatif treated consistently with her general practitioner, neurologist, and neuroopthalmologist, this is clearly not a meaningful failure to follow medical advice, and is of little importance.

Even closer to the hearing, a March 29, 2019, neurology note from Einstein stated: "Patient has had chronic headaches for years.  Mostly severe in the morning.  She also complains of deteriorating vision.  She states her vision is so blurry that she requires aid when leaving the house.  She falls all the time due to her vision."  Record at 309.

At the hearing itself, Al Abdullatif testified through an interpreter that she suffered from three or four headaches per week, and that they were always accompanied by dizziness, so that she sometimes fell.  Record at 41, 45.  She testified that, when she got a headache, she would go to her darkened bedroom, take her Topamax, put a cloth on her head, and go to sleep for four or five hours.  Record at 45-6.

It was illogical for the ALJ to find that Al Abdullatif's pseudotumor cerebri constituted a severe impairment, and nevertheless include no relevant limitation her RFC assessment.  Arguably, this was in itself error, since a severe impairment is defined as one causing a

significant impact on a claimant's ability to do basic work activity. 20 C.F.R. §416.920(c). Given the extensive evidence in the record of chronic headache accompanied by dizziness and other visual disturbance, this error was obviously not harmless. In any event, the ALJ erred in assessing the medical evidence in a selective manner which minimized the persistence and severity of Al Abdullatif's symptoms.

The Agency did not send Al Abdullatif to a consulting physician for an examination. Perhaps this is not surprising, since her original petition for benefits alleged only psychological impairment. However, at the hearing before the ALJ, Al Abdullatif's counsel emphasized that: "It's these, these headaches which impair her, and that's fairly clear." Record at 40. Thus, the headaches were undoubtedly an issue before the ALJ and she could have developed the record further (although I note there is equally no record of Al Abdullatif's counsel requesting a physical examination or other further development of the medical record).

At this point, however, the inadequacy of the ALJ's assessment of Al Abdullatif's headaches and related symptoms, whether caused by her diagnosed pseudotumor cerebri or otherwise, is obvious. For this reason, I will order the matter remanded for review of Al Abdullatif's medical records by a consulting neurologist or other expert in pseudotumor cerebri. Upon remand, Al Abdullatif may also submit such relevant expert opinions as she may obtain.

B.   *Obesity*

As to Al Abdullatif's obesity, the ALJ wrote:

> While there is no specific listing for obesity, this impairment was considered in conjunction with the claimant's other impairments as instructed by SSR 19-2. For example, there is no indication in the records that any of the claimant's conditions have been exacerbated by her obesity, or that it has impaired her ability to ambulate effectively. While the claimant's weight could reasonably be expected to have some effect on the ability to perform certain work activities, these limitations are accounted for in the residual functional capacity [assessment] set forth below.

Record at 24.  Al Abdullatif argues that the above is essentially boilerplate language, and that the ALJ erred in failing to make a detailed assessment of her obesity alone, and in combination with her other impairments.

It is not clear whether the ALJ's language would be considered inadequate "boilerplate" in all cases.  Here, however, the facts surrounding Al Abdullatif's obesity need clarification.  Her disability report stated that she was five feet tall, and weighed 130 pounds.  Record at 145.  However, that seems likely to be error or a misprint, since Al Abdullatif was noted to weigh 183 pounds at her March 26, 2018, ER visit.  Record at 384.  As such, reconsideration is warranted as to whether she could work at "all exertional levels" with no postural limitations, as the ALJ concluded.  Record at 26.

V.     *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be GRANTED IN PART, and the matter remanded to obtain a report from a consulting neurologist or other expert in pseudotumor cerebri, and for clarification of the claimant's obesity.

.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE